IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:13-cv-22882-COOKE/Turnoff

JOHN BROWNING, Individually and on behalf
of all others similarly situated,

    Plaintiff,

v.

TRACFONE WIRELESS, INC., *et al.*

    Defendants.

_____/

## DEFENDANTS TRACFONE AND WAL-MART'S MOTION TO DISMISS OR STAY THIS ACTION AND TO COMPEL ARBITRATION OF PLAINTIFF JOHN BROWNING'S CLAIMS AND INCORPORATED MEMORANDUM OF LAW

Defendants TracFone Wireless, Inc. d/b/a Straight Talk Wireless ("TracFone") and Wal-Mart Stores, Inc. ("Wal-Mart") move, pursuant to 9 U.S.C. § 3 and Fed. R. Civ. P. 12(b)(1)[1] for entry of an order either dismissing or staying this case based on the binding arbitration agreement governing Plaintiff John Browning's ("Browning") cell phone contract. In support, TracFone and Wal-Mart state as follows:

### INTRODUCTION

Browning alleges that he purchased a Straight Talk branded TracFone cell phone and a Straight Talk one-year cell phone service card at a Wal-Mart store in February 2013. *See* Compl. [ECF 1] ¶ 46. The gravamen of Browning's grievance with TracFone and Wal-Mart is that he allegedly purchased this cell phone service plan with the belief that the service would be "'unlimited' when in fact the service is subject to a number of limiting conditions that are either not disclosed or inadequately disclosed to customers." *Id.* ¶ 1. Based on this allegation, Browning has filed a three count complaint against TracFone and Wal-Mart with causes of

---

[1] TracFone and Wal-Mart are moving by a separate and unopposed motion to extend the time for TracFone and Wal-Mart to file a motion challenging the sufficiency of the complaint pursuant to Fed. R. Civ. P. 12(b)(6) until after the resolution of this motion to compel arbitration.

action under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); Breach of Express Warranty; and, Unjust Enrichment.

Browning seeks damages and purports to represent a putative class of similarly situated people who he claims also purchased Straight Talk cell phone service plans form Wal-Mart. However, this is not the proper tribunal to adjudicate this dispute.  Browning agreed to bring any dispute relating to his phone service with TracFone through arbitration and agreed that this arbitration would be on a single, as opposed to class-wide, basis.

Accordingly, pursuant to 9 U.S.C. § 3 and the principles set forth by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*, --- U.S. ----, 131 S. Ct. 1740 (2011) and *American Exp. Co. v. Italian Colors Restaurant*, --- U.S. ----, 133 S. Ct. 2304 (2013 and by the Florida Supreme Court in *McKenzie Check Advance of Florida, LLC v. Betts*, 112 So. 3d 1176 (Fla. 2013) this action should be dismissed or at least stayed.

In support of this request, TracFone relies on the October 4, 2013 Declaration of Karen Levine (the "Levine Declaration"), TracFone's Senior Vice-President of Finance, attached as **Exhibit A**, on which the Court may rely in evaluating the motion to compel arbitration.  *Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1314 (S.D. Fla. 2004) (in considering a motion to compel arbitration, a court may consider the pleadings, documents of uncontested validity, and affidavits or depositions submitted by either party).

## BACKGROUND

TracFone is a Miami, Florida based company that markets and sells prepaid wireless telecommunications services.  *See* Levine Declaration ¶ 6.  TracFone markets and sells its prepaid wireless telecommunications service—commonly called "cell phone service"—under several brands, one of which is called "Straight Talk."  *Id* ¶ 6.  TracFone's Straight Talk branded

service is available either directly from TracFone through TracFone's internet website (www.straighttalk.com) or from Wal-Mart at Wal-Mart retail stores and Wal-Mart's internet website. *Id* ¶ 7.

When Browning purchased the Straight Talk wireless telephone and service plan, he agreed to the Straight Talk Terms and Conditions of Service (the "Service Agreement"), pursuant to which he agreed to arbitrate this dispute on an individual basis, and waived any right to bring a class action in court. Complaint ¶¶ 7, 16; DE 4, Ex. 1. Browning's agreement to arbitrate and waive class-wide or representative relief is binding and enforceable, pursuant to the U.S. Supreme Court decision in *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S. Ct. 1740, 1742 (2011).

Straight Talk's wireless telephones are sold in packaging that clearly and conspicuously states:

> **"BY PURCHASING OR OPENING THIS PACKAGE, YOU ARE AGREEING TO THESE TERMS AND THE TERMS AND CONDITIONS OF SERVICE IN THE ENCLOSED USER GUIDE (AND AVAILABLE AT WWW.STRAIGHTTALK.COM)."**

*See* Levine Declaration ¶ 9; *see also Id.* ¶¶ 13─15 (Browning purchased and activated telephone). The Service Agreement—titled "Straight Talk Wireless Terms and Conditions of Service"–is available on the internet and a printed copy of the Service Agreement is included in the Services Guide that is packaged with all wireless telephones that TracFone distributes for retail sale, including the Straight Talk wireless telephone purchased by Browning. *Id.* ¶ 14; Ex. 1 to Levine Declaration. The Service Agreement informs Straight Talk customers that the Service Agreement's terms "contain important information about your legal rights, and require that certain disputes be resolved through Arbitration instead of a court trial." *See* Ex. 1 to Levin Declaration.

The arbitration provision of the Service Agreement begins with a notice in bolded all-caps:

> **PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS RIGHTS THAT YOU MAY OTHERWISE HAVE. IT PROVIDES FOR RESOLUTION OF ALL DISPUTES AND CLAIMS (INCLUDING ONES THAT ALREADY ARE THE SUBJECT OF LITIGATION) . . . THROUGH ARBITRATION INSTEAD OF SUING IN COURT IN THE EVENT THE PARTIES ARE UNABLE TO RESOLVE A DISPUTE OR CLAIM. ARBITRATION IS BINDING AND IS SUBJECT TO ONLY A VERY LIMITED REVIEW BY A COURT. THIS ARBITRATION CLAUSE SHALL SURVIVE TERMINATION OF STRAIGHT TALK'S AGREEMENT WITH YOU.**

*Id.* ¶ 15 (inapplicable exception omitted). The arbitration provision also contains a class waiver:

> You and Straight Talk agree that any arbitration will be conducted on an individual basis and not on a consolidated, class wide or representative basis. Further, you agree that the arbitrator may not consolidate proceedings or more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.

*Id.*

## MEMORANDUM OF LAW

I.  **BROWNING HAS AN ENFORCEABLE ARBITRATION AGREEMENT THAT SUBJECTS ALL CLAIMS IN THE COMPLAINT TO ARBITRATION ON AN INDIVIDUAL, AND NOT CLASS-WIDE, BASIS**

   A.  **The Federal Arbitration Act Controls Enforcement of the Arbitration Agreement Between TracFone and Browning**

Congress' intention in enacting the FAA was to "reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). The FAA provides that:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Congress enacted the FAA to ensure the "rapid and unobstructed enforcement of arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983). The FAA establishes a public policy that strongly favors the arbitration of disputes and requires courts to enforce arbitration agreements. *See KPMG v. Cocchi, LLC*, U.S., 132 S. Ct. 23, 25 (2011) ("The Federal Arbitration Act reflects an "emphatic federal policy in favor of arbitral dispute resolution."). (citations omitted). *AT&T Mobility v. Concepcion*, 131 S.Ct. 1740, 1745 (2011) (quoting *Moses H. Cone*, 460 U.S. at 24) (stating that the FAA reflects a " "liberal federal policy favoring arbitration agreements" "); M*itsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625–26 (1985); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 (11th Cir. 2011).

### B. <u>Browning Has the Burden of Rebutting the Presumption of Arbitrability</u>

The Supreme Court has held that there is a presumption of arbitrability to promote the federal policy favoring arbitration. "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986). Any doubts as to the scope of arbitrable issues or the applicability of an arbitration clause must therefore be resolved in favor of arbitration. *Id.*; *Stone v. E. F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (citing *Moses H. Cone*, 460 U.S. at 24–25). Browning—the party seeking to avoid arbitration—bears the burden of rebutting the presumption of arbitrability. *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797–98 (10th Cir. 1995).

### C. The Arbitration Agreement Between TracFone and Browning Is Enforceable

The FAA requires the rigorous enforcement of written arbitration agreements. 9 U.S.C. §§ 1, et seq. Section 3 of the FAA states in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Accordingly, a court faced with an arbitration motion plays a limited role. It should make no inquiry into the merits of the case. *AT&T Technologies*, 475 U.S. at 649. The only matters for a court to decide are (i) whether there is a valid written arbitration agreement between the parties and (ii) whether the dispute falls within the scope of the arbitration agreement. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). If these conditions are met, the court must compel arbitration. 9 U.S.C. § 3; *Schatt v. Aventura Limousine & Transportation Service, Inc.*, 2010 WL 4942654 at *1 (S.D. Fla. Nov. 30, 2010) (citing *Integrated Sec. Servs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1324 (S.D. Fla. 2009)).

### D. TracFone and Browning Have A Written Arbitration Agreement

#### 1. Browning Agreed To Arbitrate His Claims Against Tracfone

Determining whether the parties entered into a valid arbitration agreement is a matter of contract law. *Stewart v. Laidlaw and Co. Ltd., Inc.*, 2012 WL 280388 at *1 (S.D. Fla. Jan. 31, 2012). Florida law provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Fla. Stat. § 672.204(1).

Florida's statute embraces "shrinkwrap contracts," like the Service Agreement at issue here, where an agreement becomes effective as soon as a customer opens the product. *TracFone Wireless, Inc. v. Pak China Group Co. Ltd.*, 843 F. Supp. 2d 1284, 1298 (S.D. Fla. 2012) (citing *TracFone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1364 (S.D. Fla. 2009). Indeed, several judges in this district, as suggested in the previous citations, have found substantively identical TracFone service agreements to be effective and binding on consumers and other purchasers. *Id.*

When Browning opened the package containing his Straight Talk wireless phone and did not return it, he was bound by the terms of the Service Agreement. *See Pak China,* at *Id.* (quoting *Salco Distribs., LLC v. iCode, Inc.*, 2006 WL 449156, at *2 n. 5 (M.D. Fla. Feb. 22, 2006) (purchaser of software products bound by terms of shrinkwrap agreement upon opening package)). Likewise, by the very language of the Service Agreement, his activation and *use* of the wireless phone further evidenced his acceptance of the terms contained therein. *See* Ex. 1 to Levine Declaration ("By purchasing and/or activating a Straight Talk phone, SIM cardand/or using any Straight Talk service ("Service"), customer ("You") acknowledges and agrees to the following terms and conditions…"). Browning alleges, and TracFone does not dispute, that he purchased a Straight Talk telephone and one year of Straight Talk service. *See* Complaint ¶¶ 9.

Finally, it is well-settled law that a party cannot avoid his contractual obligations by choosing not to read an agreement. *See Boyd v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 614 F. Supp. 940, 942 (S.D. Fla. 1985) ("The courts is left with a customer who did not examine the arbitration clause because she did not want to or did not know better. Under these circumstances, the plaintiff cannot be heard to complain about the arbitration provision."); *see also* 28 WILLISTON ON CONTRACTS § 71:10 (4th ed. 2012) ("[O]ne cannot avoid [a] contract's

obligations by asserting it was not read, explained or understood."). Browning had ample opportunity to review the Service Agreement. Whether he did so is immaterial. *Rampersand v. Primeco Personal Commc'ns, L.P.*, 2001 WL 34872572, at *2 (S.D. Fla. Oct. 16, 2001) ("By taking the risk and activating service without successfully procuring and reading these terms and conditions, Plaintiff bound himself to arbitration.").

Put simply, TracFone offered the benefits of Straight Talk's wireless cell phone and Straight Talk service, and Browning accepted those benefits and the accompanying terms of service as soon as he opened the package, activated the cell phone, and began using the cell phone and service. One of those terms, as plainly stated in the Service Agreement, was the requirement of the resolution of disputes through arbitration.

> 2. **Each of Browning's Claims Fall Within the Scope of the Arbitration Agreements, and Any Issues Regarding the Scope of the Agreement Should be Resolved by the Arbitrator**

Browning's claims—for violation of Florida's Deceptive and Unfair Trade Practices Act, breach of express warranty, and unjust enrichment—plainly fall within the scope of the arbitration clause of the Service Agreement entered into between the parties. That clause provides that "all disputes" arising under the agreement are subject to resolution through arbitration. *See* Ex. 1 to Levin Declaration ¶ 15. When a valid written arbitration agreement exists, arbitration should be ordered unless it can be said that the arbitration clause at issue is not susceptible to an interpretation that covers the asserted dispute. *Moses H. Cone*, 460 U.S. at 24–25. Given the presumption in favor of arbitrability, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail" in defeating an arbitration provision. *AT&T Technologies*, 475 U.S. at 654 (internal quotation marks and citation omitted). The Eleventh Circuit has held that such evidence will be found only if the parties "clearly express

their intent to exclude categories of claims from their arbitration agreement." *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998).

No such intent was expressed here. The arbitration clause in the Service Agreement is broad enough to encompass all of Browning's claims, which are premised on the theory that the cell phone service he was provided differed from that which he bargained for. *See* Compl., ¶ 1 (claiming Browning and the putative class members were deceived when they did not receive "unlimited" cell phone service). The second element of the U.S. Supreme Court's test for compelling arbitration is therefore satisfied—that the arbitration provision of the Service Agreement covers Browning's claim. *See, e.g., Stewart*, 2012 WL 280388, at *2 (arbitration provision in brokerage account agreement governing "all claims, disputes and other matters arising out of or relating to this agreement" enforceable; fraud claims under the federal securities laws for fraud in connection with opening of brokerage account were to be arbitrated).

Moreover, and important to the instant analysis, while threshold questions such as the validity and scope of the agreement are typically determined by the Court, they are appropriately decided by the arbitrator when the parties "clearly and unmistakably provide otherwise." *AT & T Technologies, Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418 (1986); *see also Terminix Intern. Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1332 (11th Cir. 2005) (enforcing provision of arbitration clause providing arbitrator with power to rule on his or her own jurisdiction).

The terms of the Service Agreement at issue here conclusively establish the parties' choice to arbitrate arbitrability and, as such, this Court must allow the arbitrator to do so. First, the Service Agreement states that "[a]ll issues are for the arbitrator to decide, including the scope of this arbitration clause, but the arbitrator is bound by the terms of this agreement." *See* Ex. 1 to

Levine Declaration ¶ 15. Courts in this district have found that such a broad delegation of power vests the arbitrator with authority to resolve arbitrability. *See, e.g., Arlen House Condominium Assoc. v. Hotel Emp'ees and Restaurant Emp'ees Intern.*, 2008 WL 4844109, at *9 (S.D. Fla. Nov. 10, 2008) (finding broad arbitration clause covering all disputes authorized arbitrator to determine arbitrability).

Moreover, the Service Agreement incorporates the AAA rules, which give the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  AAA Rule 7(a).  Such an incorporation "serves as clear and unmistakable evidence of the parties' intent to delegate [arbitrability] to an arbitrator." *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *see also Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 685 (S.D. Fla. 2001) (finding that an agreement's incorporation by reference of the AAA rules "provide[s] clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); *Senior Services of Palm Beach LLC v. ABCSP Inc.*, 2012 WL 2054971, at *3 (S.D. Fla. June 7, 2012) (same).

For these reasons, while the claims at issue plainly arise out of the Service Agreement and therefore fall within the scope of the arbitration clause, to the extent there is a dispute about arbitrability of any claims, that issue must be resolved by the arbitrator.

## II. THE COURT SHOULD DISMISS THIS CASE IN FAVOR OF ARBITRATION

Although Section 3 of the FAA provides for a stay of any lawsuit until arbitration has been completed, "the rule 'was not intended to limit dismissal of a case in the proper circumstances.' " *Kozma v. Hunter Scott Fin., L.L.C.*, 2010 WL 724498, *2 (S.D. Fla. Feb. 25, 2010) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).  If all

claims raised before the district court are arbitrable, dismissal pursuant to Rule 12(h)(3), rather than just a stay, is the appropriate remedy. *Id.* (citing *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999). As the Fifth Circuit explained: "Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose." *Alford*, 975 F.2d at 1164 (internal marks and citation omitted).

"The weight of authority clearly supports dismissal of the case" on a Section 3 arbitration motion when all of the issues raised in the district court must be submitted to arbitration. *Kozma*, 2010 WL 724498, at *4 (M.D. Fla. Jan. 19, 2007); *Fedment Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999). Moreover, the Eleventh Circuit has frequently affirmed orders from district courts compelling arbitration and dismissing the underlying case. S*ee, e.g., Samadi v. MBNA Am. Bank, N.A.*, 178 F. App'x. 863 (11th Cir. 2006), *cert. denied*, 549 U.S. 993 (2006); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005); *Jackson v. Cintas Corp.*, 425 F.3d 1313 (11th Cir. 2005).

The arbitration clause at issue encompasses all claims or disputes arising out of Browning's Service Agreement. Browning has no claims before this Court that are not subject to arbitration. Therefore, all of Browning's claims should be compelled into arbitration, and this case should be dismissed.

### III.  IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS CASE IN FAVOR OF ARBITRATION

If the Court declines to dismiss Browning's case, it should, at a minimum, stay the suit until arbitration has concluded. The stay of litigation under Section 3 of the FAA is mandatory for issues in an action that are within the scope of an arbitration agreement. *See Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004) (quoting *Shearson/Am. Express, Inc. v.*

*McMahon*, 482 U.S. 220, 226 (1987)) ("'[A] court must stay its proceedings if it is satisfied that an issue before it is arbitrable ...' ") (emphasis added by 11th Cir.). In cases such as those before the court, in which "arbitrable claims predominate," a stay of the entire action is appropriate. *Id*.; *see also Genesco, Inc. v. T.Kakiuchi & Co., Ltd.*, 815 F.2d 840, 856 (2d Cir. 1987). Here arbitrable claims are the whole of the case, so really, dismissal is the right remedy.

## CONCLUSION

For the foregoing reasons, the Court should compel all of Browning's claims to arbitration and dismiss this action or, alternatively, stay the case in favor of arbitration.

## LOCAL RULE 7.1(A)(3) CERTIFICATE OF CONFERENCE

Undersigned counsel of record for Defendants TracFone Wireless, Inc. and Wal-Mart Stores, Inc., in accordance with Local Rule 7.1(a)(3), certify that counsel conferred with counsel for Plaintiff John Browning in advance of filing this motion and confirmed that Plaintiff John Browning is opposed to the relief requested herein.

Dated:  October 4, 2013

By:  *s/ Steven J.Brodie*

Steven J. Brodie (FL Bar # 333069)
Email:  sbrodie@carltonfields.com
Aaron S. Weiss (FL Bar # 48813)
Email:  aweiss@carltonfields.com
Carlton Fields, P.A
100 Southeast Second Street, Suite No. 4200
Miami, Florida  33131
Telephone No.  (305) 530-0050
Facsimile No.  (305) 530-0055

*Attorneys for Defendants TracFone Wireless, Inc. and Wal-Mart Stores, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  *s/ Steven J. Brodie*
Steven J. Brodie

## Service List

*Browning v. TracFone Wireless, Inc.*
**1:13-cv-22882-COOKE/Turnoff**

John Yanchunis
Email: jyanchunis@forthepeople.com
J. Andrew Meyer
Email: ameyer@forthepeople.com
Rachel Soffin
Email: rsoffin@forthepeople.com
Morgan & Morgan
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4787

*Attorneys for Plaintiff John Browning*

(Via CM/ECF)